# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

SERENA MICHELLE JOSEPH,

    Plaintiff,

    v.

DEPARTMENT OF CORRECTIONS, *et al.*,

    Defendants.

Case No. 3:20-cv-00294-SLG-KFR

**REPORT AND RECOMMENDATION RE MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (hereinafter "Motion") filed by Defendants Lieutenant Clifton Booher, Correctional Officer Angelina Fainuulelei, Superintendent Gloria Johnson, Sergeant Ty Johnston, and Sergeant Steve West.[1] Plaintiff Serena Joseph responded in opposition;[2] Defendants replied.[3] Oral argument on the Motion was not requested and was not necessary for the Court's recommendation. Because Plaintiff has failed to produce evidence to create a genuine issue of material fact that Defendants retaliated against her for filing prison grievances, Defendants are entitled to qualified immunity on Plaintiff's conspiracy claim. Therefore, the Court recommends that the Motion be **GRANTED** and that Plaintiff's conspiracy claim—the only claim remaining in this case—be **DISMISSED with prejudice**.

**I.    BACKGROUND**

In November 2020, Plaintiff—an inmate at Hiland Mountain Correctional

---

[1] Docs. 58, 59.
[2] Doc. 73. Plaintiff filed a Response at Docket 72 and subsequently filed a "Notice of Errata" at Docket 73 with the "correct [response] memorandum" attached. The Court treats Plaintiff's attached memorandum at Docket 73 as the operative Response to the Motion.
[3] Doc. 76.

Center ("Hiland")—filed a *pro se* civil rights complaint in this case, asserting claims pursuant to 42 U.S.C. § 1983 for violations of the First, Fourteenth, and Sixth Amendments to the U.S. Constitution.[4] In her initial Complaint, Plaintiff named as defendants the Alaska Department of Corrections ("DOC"), Sergeant Anita McCarter, Deputy Director Sidney Wood, Sergeant Roberta Maseuli, Sergeant Johnston, Superintendent Johnson, and Officer Fainuulelei.[5] In December 2020, Plaintiff filed an Amended Complaint which added Sergeant West and Lieutenant Booher as defendants.[6] In September 2021, the Court appointed counsel for Plaintiff;[7] in October 2021, through counsel, Plaintiff filed a "Third Amended Complaint" which added DOC Commissioner Nancy Dahlstrom as a defendant and generally maintained Plaintiff's original claims against the previously-named defendants.[8]

In November 2021, Defendants moved to dismiss the Third Amended Complaint for failure to state a claim.[9] Plaintiff opposed the motion to dismiss except with respect to her Sixth Amendment claim and her claims against DOC, Commissioner Dahlstrom, Sergeant McCarter, Director Wood, and Sergeant Maseuli, which she moved to withdraw.[10] The Court recommended dismissal of all claims except for Count 1, which alleges that Sergeant West, Lieutenant Booher, Sergeant Johnston, Superintendent Johnson, and Officer Fainuulelei conspired to retaliate against Plaintiff in violation of the First Amendment.[11] The District Court adopted this recommendation in full and ordered Plaintiff to file either an amended

---

[4] Doc. 1.
[5] *Id.*
[6] Doc. 3.
[7] Doc. 27.
[8] Doc. 32. Plaintiff filed a motion to amend her Amended Complaint while she was still representing herself. Doc. 25. After Plaintiff and appointed counsel reached a representation agreement and before the Court ruled on that motion, Plaintiff withdrew the motion and filed the "Third Amended Complaint." Doc. 25.
[9] Docs. 33; 34.
[10] Docs. 40; 41.
[11] Docs. 46; 32-6 at 6, ¶ 25.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR
2
Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 2 of 19

complaint or a notice of intent to proceed on the conspiracy claim.[12]  Plaintiff filed the latter.[13]

Plaintiff's conspiracy claim is based on allegations that Defendants retaliated against her for filing or attempting to file grievances about staff misconduct.[14] Plaintiff's Third Amended Complaint mentions three specific incidents that led her to file grievances.  First, Plaintiff alleges that in March 2020, Officer Fainuulelei told Plaintiff to go "get [Plaintiff's] people" and responded sarcastically when Plaintiff asked if Officer Fainuulelei meant other Black women.[15]  Second, Plaintiff alleges that in May or June 2020, Officer Fainuulelei "forced Plaintiff to move [housing] units," and that Plaintiff later learned that she had been moved because she was in a relationship with another inmate.[16]  And third, Plaintiff alleges that Sergeant Johnston interviewed Plaintiff about another grievance she lodged against Officer Fainuulelei in front of the other inmates in her housing unit.[17]

Plaintiff suggests that Defendants engaged in various forms of retaliation against her for raising these complaints.  Plaintiff alleges that Officer Fainuulelei retaliated by: (1) telling one of Plaintiff's fellow inmates to "teach [Plaintiff] how to spell [Officer Fainuulelei's] name"; (2) making a comment that implied that Officer Fainuulelei considered Plaintiff's grievance to be "an act of 'snitching'"; and (3) by moving Plaintiff to a different cell.[18]  In addition, Plaintiff alleges that Sergeant Johnston retaliated against her by conducting the interview about one of her

---

[12] Doc. 47.
[13] Doc. 49.
[14] Doc. 32 at 6, ¶ 25.  The affidavits Plaintiff submitted in support of her Third Amended Complaint appear to refer to grievances and requests for information ("RFIs") interchangeably.  *See* Docs. 42-1; 42-2; 42-3; 42-4; 42-5; 42-6; 42-7; 42-8.  Plaintiff also mentions "letters" that she attempted to give to Superintendent Johnson.  Docs. 42-4; 42-7.  Because all of these documents appear to raise or pertain to complaints about prison staff conduct, the Court refers to them collectively as "grievances."
[15] Docs. 32 at 4, ¶ 15; 42-1 at 1.
[16] Doc. 32 at 5, ¶ 19; 42-3 at 1; 42-4 at 1.
[17] Docs. 32 at 5, ¶ 20; 42-5; 42-8.
[18] Docs. 32 at 4–5, ¶¶ 16, 18–19; 42-2 at 1.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR
3
Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 3 of 19

grievances in a public setting.[19] Moreover, Plaintiff alleges that Lieutenant Booher, Superintendent Johnson, Sergeant Johnston, and Sergeant West retaliated by ignoring or failing to adequately resolve her grievances.[20]

In August 2023, Defendants filed the present Motion, requesting summary judgment on Plaintiff's conspiracy claim.[21] Defendants contend that they are entitled to summary judgment on three grounds: (1) there was no agreement between Defendants to not respond to Plaintiff's grievances, meaning that the conspiracy claim must fail; (2) Defendants' actions do not constitute retaliation against Plaintiff in violation of the First Amendment; and (3) Defendants are entitled to qualified immunity.[22] In support of the Motion, Defendants filed declarations by their counsel, Officer Fainuulelei, Sergeant West, Superintendent Johnson, Sergeant Johnston, and Lieutenant Booher.[23]

In September 2023, Plaintiff responded in opposition.[24] Plaintiff asserts that summary judgment is not appropriate because there remain genuine disputes of material fact, and that construing those disputed facts in her favor, a reasonable jury could find that Defendants conspired to retaliate against her.[25] Plaintiff further rejects Defendants' argument that they are entitled to qualified immunity.[26] Plaintiff submitted no additional evidence in support of her response brief, relying instead on selected portions of her Third Amended Complaint and the evidence Defendants filed with the Motion.[27]

---

[19] Docs. 32 at 5, ¶ 20; 73 at 13.
[20] Doc. 32 at 4–5, ¶¶ 15–20.
[21] Doc. 59.
[22] *Id.* at 18–19.
[23] Docs. 60–66.
[24] Doc. 73.
[25] *Id.* at 12–15.
[26] Doc. 73 at 15–16.
[27] Plaintiff's Third Amended Complaint "incorporates the attachments and exhibits included with her original Complaint." Doc. 32 at 2. Plaintiff filed 10 affidavits and 12 exhibits in support of the conspiracy claim she alleged in her initial Complaint. Doc. 42. For purposes of summary judgment, the Court will consider facts alleged in Plaintiff's Third Amended

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR
4
Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 4 of 19

In November 2023, the Court issued an order directing Plaintiff to refile her response to the Motion, noting the lack of additional evidence accompanying her briefing.[28] The Court set a deadline by which to refile and warned that failure to produce evidence could "result in the Court considering Defendants' properly supported facts undisputed and ruling on the motion accordingly."[29] Plaintiff did not meet this deadline; as a result, the Court took the Motion under advisement on the existing briefing.[30] As of the date of this Report and Recommendation, Plaintiff had not refiled her response or explained why she had not done so.

## II. LEGAL STANDARD

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] A fact is "material" if it might affect the outcome of the case under the governing law.[32] A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable fact-finder to decide in favor of the nonmoving party.[33] In determining whether a genuine dispute of material fact exists, the court views the evidence in the light most favorable to the nonmoving party, and draws all

---

Complaint, but only those that are based on Plaintiff's personal knowledge, that are supported by her sworn testimony, and that could be presented in an admissible form at trial. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) ("A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify."); *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (choosing to consider a diary's contents when evaluating a summary judgment motion because those contents "could be presented in an admissible form at trial"); *see also* Fed. R. Civ. P. 56(c)(3)–(4).

[28] Doc. 77.
[29] *Id.* at 1–2.
[30] Since Plaintiff is represented by counsel and should have been aware of the need to follow this deadline or to move for an extension of time if one was necessary, the Court declined to remind Plaintiff of its order to refile after the deadline passed.
[31] Fed. R. Civ. P. 56(a).
[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").
[33] *Id.* at 248.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

5

Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 5 of 19

reasonable inferences in favor of that party.[34]

The party moving for summary judgment bears the ultimate burden of persuasion and the initial burden of producing evidence that shows the absence of a genuine issue of material fact.[35] Where the moving party would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."[36] "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything."[37]

If a moving party successfully carries its burden of production, however, the nonmoving party "must produce evidence to support its claim or defense."[38] It is not the task of the court to "scour the record in search of a genuine issue of triable fact."[39] Rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment."[40] "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."[41]

### III. DISCUSSION

Plaintiff brings her claims under 42 U.S.C. § 1983, which provides that

> [e]very person who, under color of [State law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

---

[34] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).
[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[36] *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).
[37] *Id.* at 1102–03.
[38] *Id.* at 1103.
[39] *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted) (quoting *Richards v. Combined Ins.*, 55 F.3d 247, 251 (7th Cir. 1995)).
[40] *Id.* (quoting *Richards*, 55 F.3d at 251).
[41] *Nissan Fire & Marine Ins.*, 210 F.3d at 1102.

R&R re Motion for Summary Judgment 6
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 6 of 19

liable to the party injured . . . .

To prevail on a § 1983 claim, a plaintiff must establish two "essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."[42]

Plaintiff's sole remaining claim is that Defendants conspired to retaliate against her for exercising her First Amendment right to file prison grievances.[43] A § 1983 conspiracy claim has two elements: (1) the existence of an agreement or "meeting of the minds" between the defendants to deprive the plaintiff of a constitutional right; and (2) an actual deprivation of that right resulting from the agreement.[44] To satisfy this second element, a plaintiff must demonstrate "an underlying constitutional violation" because "[c]onspiracy is not itself a constitutional tort under § 1983."[45]

Government officials sued under § 1983 may raise the affirmative defense of qualified immunity, as Defendants do here.[46] Qualified immunity shields government officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[47] To determine whether an official is entitled to qualified immunity, a court considers two questions: "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established

---

[42] *West v. Atkins*, 487 U.S 42, 48 (1988).
[43] Doc. 32 at 6–7, ¶¶ 24–25.
[44] *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).
[45] *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012).
[46] *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) ("Qualified immunity is an affirmative defense that the government has the burden of pleading and proving." (internal quotation marks omitted) (quoting *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017))).
[47] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR
7
Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 7 of 19

at the time of the officer's alleged misconduct."[48]  Qualified immunity applies unless both prongs of the inquiry are satisfied.[49]  A court may analyze these questions in any order, though it "is often beneficial" to begin with the first prong because this process "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable."[50]

With this guidance in mind, the Court begins the qualified immunity analysis with the first prong.  Construing the evidence and inferences in the light most favorable to Plaintiff, Defendants have shown that there is no genuine dispute that they did not unconstitutionally retaliate against Plaintiff for exercising her right to file prison grievances.  Therefore, Plaintiff's conspiracy claim fails because it lacks an underlying constitutional violation, and Defendants are accordingly entitled to qualified immunity.

**A. Defendants Did Not Unconstitutionally Retaliate Against Plaintiff.**

The First Amendment guarantees "the right of the people . . . to petition the government for a redress of grievances."[51]  In the prison context, the right to petition the government includes an inmate's right to seek redress of grievances from prison authorities.[52]  An inmate may sue under § 1983 when their exercise of this First Amendment right "result[s] in retaliatory action by prison officials."[53]  To establish

---

[48] *Est. of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014)).
[49] *See Pearson*, 555 U.S. at 232.
[50] *Id.* at 236.
[51] U.S. Const. amend. I.
[52] *See Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (observing that the First Amendment right to file prison grievances is the "most fundamental of the constitutional protections that prisoners retain").
[53] *Jones*, 791 F.3d at 1035.  In the Ninth Circuit, it is not entirely clear whether a "direct" claim for violation of the right to petition for grievances exists or whether the only actionable right to petition claim is an "indirect" claim that sounds in retaliation.  *See Williams v. Fox,* No. 1:16-cv-00143-DCN, 2022 WL 17659688, at *3–7 (D. Idaho Nov. 28,

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

8

Case 3:20-cv-00294-SLG-KFR     Document 78     Filed 02/13/24     Page 8 of 19

a § 1983 claim of retaliation for engaging in activity protected by the First Amendment in the prison context, a plaintiff must show: "(1) . . . that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of [their] First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[54]

Plaintiff alleges that Defendants retaliated against her for exercising her right to petition by filing or attempting to file grievances.[55] First, Plaintiff alleges that Officer Fainuulelei retaliated by making a hostile comment about Plaintiff's first grievance against her on two separate occasions, and by moving Plaintiff to a different cell.[56] Second, Plaintiff alleges that Sergeant Johnston retaliated by addressing one of her grievances in front of other inmates.[57] And third, Plaintiff alleges that Lieutenant Booher, Superintendent Johnson, Sergeant Johnston, and Sergeant West retaliated by ignoring or failing to adequately resolve several grievances she filed.[58] Defendants argue that none of this alleged conduct constitutes retaliation.[59] The Court addresses each of these three bases for Plaintiff's underlying retaliation claim in turn.

### 1. Officer Fainuulelei did not retaliate against Plaintiff by commenting on her first grievance or by moving her to a different cell in the same housing unit.

The allegations in Plaintiff's Third Amended Complaint that pertain to Officer

---

2022) (explaining uncertainty and listing bases for concluding that there is no direct right to petition claim); *Richey v. Dahne*, 733 F. App'x 881, 883–84 (9th Cir. 2018) (addressing separately prisoner's claim for violation of his First Amendment right to petition and claim for retaliation for exercising his rights under the First Amendment, where both claims were based on the defendant's refusal to allow a grievance to proceed). In any event, because Plaintiff's conspiracy claim appears to be premised solely on an underlying retaliation claim, the Court evaluates only that underlying claim. *See* Docs. 32 at 6, ¶ 25; 73 at 12–15.

[54] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).
[55] Doc. 32 at 6, ¶ 25.
[56] *Id.* at 4–5, ¶¶ 16–17, 19–20.
[57] Docs. 32 at 5, ¶ 20; 73 at 13.
[58] Doc. 32 at 4–5, ¶¶ 15–20.
[59] Doc. 59 at 18–19.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR
9

Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 9 of 19

Fainuulelei are as follows. First, Plaintiff alleges that after she filed her first grievance against Officer Fainuulelei in March 2020, Officer Fainuulelei told one of Plaintiff's fellow inmates to "teach [Plaintiff] how to spell [Officer Fainuulelei's] name."[60] Second, Plaintiff alleges that while Officer Fainuulelei was attempting to break up an argument between two inmates in April 2020, Officer Fainuulelei "noticed" Plaintiff in the room and said, "If you bitches don't stop I'm going to separate y'all and I don't care if y'all tell on me cause y'all some 'snitches' in here anyways."[61] Plaintiff suggests that this statement "insinuat[es] that [Officer Fainuulelei] considered Plaintiff's grievance an act of 'snitching.'"[62] And third, Plaintiff alleges that Officer Fainuulelei "forced Plaintiff to move units" in May or June 2020, with Plaintiff later learning that the move was due to information that Plaintiff was in a relationship with another inmate.[63]

Defendants argue that Officer Fainuulelei's actions do not amount to First Amendment retaliation. Defendants assert that Plaintiff lacks evidence that Officer Fainuulelei "threatened to or actually did take" any adverse action against her.[64] Defendants further contend that there is no factual dispute that Officer Fainuulelei did not personally decide to reassign Plaintiff to a new cell, but rather at most only "effected" the reassignment without any retaliatory motive.[65] According to Defendants, the only relevant evidence in the record pertaining to Officer

---

[60] Docs. 32 at 4, ¶ 16; 42-2 at 1.
[61] Docs. 32 at 5, ¶ 18; 42-3 at 1.
[62] Doc. 32 at 5, ¶ 18.
[63] Docs. 32 at 5, ¶ 19; 42-3 at 1; 42-4 at 1. The affidavits Plaintiff submitted in support of her Third Amended Complaint also address two other incidents involving CO Fainuulelei. In the first, CO Fainuulelei allegedly told Plaintiff that Plaintiff could not leave chairs in front of her cell, even though a chair could be left in front of a different cell. Doc. 42-4 at 1. In the second, CO Fainuulelei allegedly told Plaintiff that Plaintiff was required to leave the door unlocked while inside her cell. Docs. 42-9 at 1; 42-10 at 1. However, Plaintiff does not appear to contend that these incidents constitute retaliation because they are not mentioned at all in the Third Amended Complaint. The Court therefore declines to address Defendants' arguments pertaining to these two incidents.
[64] Doc. 59 at 45.
[65] *Id.* at 29.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
2:20-cv-00294-SLG-KFR
10

Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 10 of 19

Fainuulelei's motive is her testimony that she did not intend to prevent or discourage Plaintiff from filing grievances.[66]

In response, Plaintiff argues that Officer Fainuulelei's actions threatened her and were therefore retaliatory, but Plaintiff does not contest Defendants' evidence as to Officer Fainuulelei's motive.[67]

### a. Officer Fainuulelei's statements after Plaintiff lodged her first grievance were not adverse actions.

For purposes of a retaliation claim, an adverse action is an action that "would chill a person of ordinary firmness" from engaging in the protected conduct.[68] Though an adverse action need not rise to the level of an independent constitutional violation, inconsequential or *de minimis* harm does not make an action adverse.[69] A threat of harm can be an adverse action, but only if the threat could reasonably be interpreted by a person of ordinary firmness as "intimating that some sort of punishment or adverse regulatory action would follow."[70]

To the extent that Plaintiff relies on each of Officer Fainuulelei's alleged statements in March and April 2020 as independently sufficient evidence of unconstitutional retaliation, Plaintiff has failed to establish a genuine issue of material fact as to whether these statements were adverse actions.[71] Generously

---

[66] *Id.*; *see also* Doc. 61 at 3, ¶ 12.
[67] Doc. 73 at 13–15.
[68] *Pinard v. Clatskanie Sch. Dist.*, 467 F.3d 755, 770 (9th Cir. 2006). Contrary to Defendants' assertions, their argument that CO Fainuulelei did not "t[ake] any retaliatory action against [Plaintiff]" requires an objective assessment of the potential for CO Fainuulelei's actions to chill the protected conduct. *See* Docs. 59 at 45; 76 at 7–8.
[69] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (explaining that to support a claim, a harm must be "more than minimal").
[70] *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (internal quotation marks and citations omitted); *see also id.* (holding that a threatened harm need not be carried out to be considered an adverse action).
[71] Plaintiff's Third Amended Complaint and Response to the Motion do not clearly indicate whether Plaintiff views each statement as a separate instance of retaliation or as evidence of retaliatory motive for Plaintiff's subsequent housing reassignment. *See* Docs. 32 at 4–5, ¶¶ 15–20, 24-25; Doc. 73 at 13.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR
11

Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 11 of 19

construing Officer Fainuulelei's instruction to another inmate to "teach [Plaintiff] how to spell [Officer Fainuulelei's] name" as a threat of harm, it does not amount to an adverse action. Any threat was indirect in delivery and vague as to potential repercussions for engaging in behavior not specified in the threat. Even if intended to be intimidating, Officer Fainuulelei's March 2020 statement could not reasonably be interpreted by a person of ordinary firmness as suggesting that punishment or any other consequences would follow.[72]

Officer Fainuulelei's mention of "snitches" when breaking up a fight, construed as a veiled reference to Plaintiff for filing a grievance against her, is similarly not an adverse action. A correctional officer calling an inmate a "snitch" can constitute an adverse action in circumstances where the defendant's use of the term could put the "snitch" at risk of harm from other inmates.[73] Such circumstances include a correctional officer labeling an inmate a snitch without context or accusing an inmate of snitching on other inmates.[74] Here, though, Officer Fainuulelei's comment did not identify Plaintiff as one of the purported snitches to whom she referred. Furthermore, Plaintiff does not allege or present any evidence showing that the other inmates who heard the remark would have understood it to refer

---

[72] *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (observing that "[t]he less direct and specific a threat, the less likely" courts are to consider the threat an adverse action); *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) (holding that official's statement, "We'll be ramping things up," was too vague to be considered an adverse action because, among other reasons, the statement did not specifically reference the plaintiff "or what he might have coming"); *Schlosser v. Walker*, No. 3:20-cv-433 (SRU), 2020 WL 4818563, at *7 (D. Conn. Aug. 17, 2020) (concluding that correctional officers' statement that inmate should "remember whose house he lives in" was "nothing more than a vague intimation of an unspecified harm" and was therefore not an adverse action).

[73] *See Lyons v. Dicus*, 663 F. App'x 498, 499–500 (9th Cir. 2016) (holding that plaintiff's complaint stated a retaliation claim based on correctional officer's use of term "snitch kites" to refer to prison grievance forms within earshot of other prisoners after plaintiff requested those forms); *Jackson v. O'Brien*, No. 1:18-cv-00032-RAL, 2021 WL 3174687, at *6 (W.D. Penn. July 27, 2021).

[74] *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138–39 (9th Cir. 1989) (holding that plaintiff's complaint stated a retaliation claim where correctional officer allegedly told other inmates plaintiff "snitch[ed] on everyone"); *Jackson*, 2021 WL 3174687, at *5–6.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

12

Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 12 of 19

specifically to her. Officer Fainuulelei's April 2020 statement thus would not have chilled a person of ordinary firmness from continuing to file grievances.

Therefore, the Court finds there is no genuine dispute that Officer Fainuulelei did not retaliate against Plaintiff by making the two remarks alleged in the Third Amended Complaint.

### b. Officer Fainuulelei did not act with retaliatory motive in moving Plaintiff to a different cell.

A retaliation claim also requires proof that the protected conduct was a substantial or motivating factor for the alleged retaliatory action.[75] Retaliatory motive may be shown by either direct or circumstantial evidence.[76] There are three general types of circumstantial evidence of retaliatory motive: (1) proximity in time between protected speech and the alleged retaliation; (2) evidence that the defendant expressed opposition to the speech; and (3) evidence that the reasons proffered by the defendant for the adverse action were "false and pretextual."[77] Where a plaintiff relies solely on circumstantial evidence to show retaliation, that evidence must be specific to defeat a motion for summary judgment.[78] Mere speculation that a defendant acted out of retaliation is not sufficient.[79]

Here, Defendants have met their burden of demonstrating that Plaintiff lacks evidence to show that Officer Fainuulelei moved Plaintiff to a new cell with retaliatory motive. First and foremost, Plaintiff's bed history shows that Officer Fainuulelei did not decide to reassign Plaintiff to a new cell.[80] Plaintiff suggests that Officer Fainuulelei was nevertheless involved in that decision because Officer

---

[75] *See Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997); *Rhodes*, 408 F.3d at 567.
[76] *Watison*, 668 F.3d at 1114.
[77] *McCollum v. Cal. Dep't of Corr. & Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011).
[78] *See Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010); s*ee also Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003).
[79] *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).
[80] Doc. 59-1 at 1.

R&R re Motion for Summary Judgment 13
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 13 of 19

Fainuulelei was the source of the information that she was in a relationship with another inmate, which was the basis for the move.[81] However, Plaintiff's testimony does not create a genuine dispute of material fact as to this issue. Plaintiff testifies that when she confronted a correctional officer about the reasons for the move, she asked the officer if Officer Fainuulelei was the source of the information that she was in a relationship with another inmate.[82] But Plaintiff does not indicate what the response to that question was and offers no evidence beyond her own speculation that Officer Fainuulelei ever provided this information. Without evidence that Officer Fainuulelei played any part in the housing reassignment decision, she cannot be liable for any violation of Plaintiff's rights associated with that decision.[83]

Furthermore, even if there were a genuine dispute as to Officer Fainuulelei's participation in the reassignment decision, Plaintiff fails to demonstrate that Officer Fainuulelei might have acted with retaliatory intent. Even assuming the two-month gap in between Plaintiff's first grievance and the housing reassignment is some circumstantial evidence of retaliatory motive, suspect timing alone is insufficient to support a finding of retaliatory motive.[84] Plaintiff has not presented specific, non-speculative evidence from which to infer that Officer Fainuulelei expressed opposition to her filing the grievance, or that the basis for the reassignment was false or pretextual. Therefore, Plaintiff has failed to raise a triable issue as to

---

[81] Docs. 42-3 at 1; 42-4 at 1.
[82] Docs. 42-3 at 1; 42-4 at 1.
[83] *See Lacey*, 693 F.3d at 916 (explaining that a government official's culpability under § 1983 is limited both by "the causal connection of the official to the complained-of violation" and also by the official's "intent . . . to deprive another of that person's rights," because an official "is only liable for his or her own misconduct").
[84] *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that defendants did not act with retaliatory motive because beyond suspect timing, "there [was] little else to support [an] inference" of retaliatory motive); *cf. also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (holding that plaintiff failed to show a nexus between his protected speech and any adverse employment action suffered because there was no evidence supporting retaliatory motive beyond fact that alleged adverse action occurred after protected speech).

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
2:20-cv-00294-SLG-KFR

14

Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 14 of 19

retaliatory motive.[85]

Accordingly, there is no genuine dispute that Officer Fainuulelei did not retaliate against Plaintiff by moving her to a different cell.

### 2. Sergeant Johnston Did Not Retaliate Against Plaintiff by Interviewing Her About a Grievance in Front of Other Inmates.

Plaintiff alleges that Sergeant Johnston retaliated against her for filing grievances by purposely interviewing her about her second grievance against Officer Fainuulelei in front of other inmates during meal time.[86] Defendants submit that Plaintiff has no evidence that Sergeant Johnston had any retaliatory motive for conducting the interview in this manner, noting that Plaintiff did not engage in any discovery with respect to this issue.[87] Moreover, Defendants assert that "the only [relevant] evidence in the record is Sergeant Johnston's own testimony that he did not inten[d] to prevent or dissuade [Plaintiff] from filing . . . grievances."[88] Plaintiff's Response does not address these arguments.[89]

Defendants have met their burden of production with direct evidence that Sergeant Johnston lacked retaliatory motive for addressing Plaintiff's grievance in front of other inmates. The only other evidence that could bear on Sergeant Johnston's motive is Plaintiff's testimony that Superintendent Johnson told Plaintiff that "[Sergeant] Johnston's problem is he wants to be liked by his coworkers."[90] However, this statement does not give rise to a reasonable inference that Sergeant Johnston would be motivated to retaliate against Plaintiff because she had filed grievances regarding other prison staff.[91] If anything, Superintendent Johnson's

---

[85] *See Anthoine*, 605 F.3d at 753; *Bruce*, 351 F.3d at 1288–89.
[86] Doc. 32 at 5, ¶ 20.
[87] Doc. 59 at 39; *see also* Doc. 60.
[88] Doc. 59 at 39; *see also* Doc. 64 at 2, ¶ 6.
[89] *See* Doc. 73 at 13–15.
[90] Doc. 42-8 at 1.
[91] Plaintiff had not yet filed a grievance against Sergeant Johnston at the time of the interview. *See* Doc. 42-7 at 1.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
2:20-cv-00294-SLG-KFR

15

Case 3:20-cv-00294-SLG-KFR   Document 78   Filed 02/13/24   Page 15 of 19

statement indicates that although Sergeant Johnston may have had an improper reason for conducting the interview in front of other inmates, that reason was unrelated to Plaintiff's protected conduct and thus not retaliatory.[92] Plaintiff offers no additional evidence linking Sergeant Johnston to any retaliatory motive.[93]

Therefore, there is no genuine dispute that Sergeant Johnston did not retaliate against Plaintiff by interviewing her about a grievance in public.

### 3. Lieutenant Booher, Superintendent Johnson, Sergeant Johnston, and Sergeant West Did Not Retaliate Against Plaintiff by Ignoring or Failing to Adequately Address Her Grievances.

Plaintiff broadly alleges that Lieutenant Booher, Superintendent Johnson, Sergeant Johnston, and Sergeant West retaliated against her for filing grievances by "d[oing] nothing" in response to those grievances or by failing to resolve the issues raised in them.[94] Plaintiff suggests that many of her grievances were not processed or ignored, as evidenced by the lack of official responses to them.[95] Plaintiff also alleges that although Superintendent Johnson met with her to discuss her concerns regarding Officer Fainuulelei and Sergeant Johnston, Superintendent Johnson failed to follow up with Plaintiff after the meeting, as she had promised.[96]

Defendants contend that Plaintiff cannot show any adverse action because

---

[92] *See Rhodes*, 408 F.3d at 567 (holding that a prisoner retaliation claim requires a showing that a state actor took an adverse action against an inmate "because of . . . that [inmate's] protected conduct"); *Nwandu v. Bach*, No. 06-CV-0999 MMA WMC, 2020 WL 2486771, at *12 (S.D. Cal. Apr. 21, 2010), *report and recommendation adopted*, 2010 WL 2487194 (S.D. Cal. June 15, 2010) ("Plaintiff has failed to establish the causation element of his retaliation claim because he has offered no evidence demonstrating Defendants . . . destroyed and lost his legal and personal property *because of* the protected conduct Plaintiff engaged in by filing [a] grievance against [one Defendant].").
[93] Without evidence of retaliatory motive, Plaintiff's argument that Sergeant Johnston's public interview was an "intimidation tactic" is neither here nor there. *See* Doc. 73 at 15.
[94] Doc. 32 at 4–6, ¶¶ 16–17, 19–20, 25.
[95] *Id.*; *see also* Docs. 42-1, 42-2, 42-3, 42-4, 42-5, 42-6, 42-7, 42-8, 42-9.
[96] Docs. 32 at 5, ¶ 20; 42-9. Plaintiff's own sworn affidavits contradict her additional allegation in the Third Amended Complaint that Superintendent Johnson "defended Sergeant Johnston's actions" during this meeting. *See* Docs. 42-7; 42-8 (testifying that Superintendent Johnson told Plaintiff she planned to have Sergeant Johnston "apologize to [Plaintiff] and that he knows better than to interview anyone in the commons in front of anybody").

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

16

Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 16 of 19

there is no dispute of material fact that they did not ignore Plaintiff's grievances and instead addressed some of them internally and others with Plaintiff.[97] Defendants assert that Plaintiff's own testimony regarding her meeting with Superintendent Johnson shows that Defendants did not ignore Plaintiff's complaints of staff misconduct.[98] Defendants also maintain that Superintendent Johnson's uncontroverted testimony demonstrates that at the end of her meeting with Plaintiff, Superintendent Johnson asked if their conversation had sufficiently resolved the matter regarding Sergeant Johnston, and Plaintiff responded that it had.[99] Defendants assert that they likewise addressed Plaintiff's complaints regarding Officer Fainuulelei, as evidenced by Plaintiff's own testimony that her meeting with Superintendent Johnson covered Officer Fainuulelei's behavior, Superintendent Johnson's testimony that she spoke to Lieutenant Booher about Officer Fainuulelei, Lieutenant Booher's testimony that he spoke to Officer Fainuulelei to address Plaintiff's complaints, and Officer Fainuulelei's testimony that she was informed about the substance of these complaints.[100] Plaintiff again does not address these arguments in her Response.[101]

Defendants have met their burden of showing that they took action to address the complaints Plaintiff lodged against Officer Fainuulelei and Sergeant Johnston. Plaintiff fails to produce evidence to create a factual dispute as to whether or how Defendants responded to her grievances. Defendants may not have consistently addressed Plaintiff's complaints promptly, formally, or directly. However, any failure by Defendants to resolve Plaintiff's concerns in her favor or to follow certain procedures in addressing those concerns is not an adverse action for purposes of a

---

[97] Doc. 59 at 34–38.
[98] *Id.* at 36–37.
[99] *Id.* at 35–36; Doc. 66 at 2, ¶ 7.
[100] Docs. 59 at 37–38; 61 at 2, ¶ 3; 65 at 2, ¶ 6.
[101] *See* Doc. 73 at 13–15.

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
2:20-cv-00294-SLG-KFR

17

First Amendment retaliation claim.[102]

In sum, there is no genuine dispute that Defendants did not retaliate against Plaintiff by ignoring or failing to adequately respond to her grievances. Because Defendants did not retaliate against Plaintiff, they cannot be liable for a conspiracy to commit that constitutional violation against her, and they are entitled to qualified immunity.[103]

### IV. CONCLUSION

There is no genuine dispute of material fact that Defendants did not retaliate against Plaintiff in violation of the First Amendment.[104] As a result, Defendants are entitled to qualified immunity and summary judgment on Plaintiff's conspiracy claim. Accordingly, the Court recommends that the Motion be **GRANTED** and that Plaintiff's claims be **DISMISSED with prejudice.**

DATED this 12th day of February, 2024 at Anchorage, Alaska.

/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

---

[102] *See Voits v. Brown*, No. 2:22-CV-01365-MC, 2023 WL 2447474, at *1 (D. Or. Feb. 23, 2023) ("The denial of a grievance, standing alone, is de minimis action and insufficient to establish a claim of First Amendment retaliation."); *Wright v. Shannon*, No. 1:05-cv-01485-LYO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (concluding that allegations that prison officials denied or ignored inmate appeals failed to state a First Amendment retaliation claim, noting lack of precedent suggesting that the First Amendment "requires grievances to be processed in a certain way"); *Dicey v. Hanks*, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) ("[T]he denial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of 'ordinary firmness' from further First Amendment activities."); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa.) (determining that the rejection or denial of prison grievances does not constitute adverse action for purposes of a retaliation claim), *aff'd*, 358 F. App'x 302 (3d Cir. 2009); *Colvin v. Horton*, No. 2:19-cv-122, 2019 WL 3927425, at *12 (W.D. Mich. Aug. 20, 2019) (holding that the failure to process a grievance is not adverse action); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (finding that the refusal to accept a grievance is insufficient to constitute an adverse action); *Frazier v. Zavaras*, No. 10-cv-02534-CMA-KMT, 2011 WL 4537001, at *9 (D. Colo.

R&R re Motion for Summary Judgment  18
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 18 of 19

# NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[105] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's order.[106]

A party may file written objections to the magistrate judge's order within 14 fourteen days.[107] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[108]

---

Sept. 30, 2011) (stating that the "denial of an administrative grievance is not an 'adverse action'"); *cf. also Mann v. Adams*, 855 F.2d 639, 940 (9th Cir. 1988) (holding that prisoners do not have a constitutional entitlement to a grievance procedure).

[103] *See Est. of Lopez ex rel. Lopez*, 871 F.3d at 1005.

[104] Given the absence of an underlying constitutional violation to support Plaintiff's conspiracy claim, the Court declines to address the other arguments raised in Defendants' Motion.

[105] 28 U.S.C. § 636(b)(1)(B).

[106] *Id.* § 636(b)(1)(C).

[107] *Id.*

[108] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

R&R re Motion for Summary Judgment
*Joseph v. Dep't of Corr., et al.*
3:20-cv-00294-SLG-KFR

19

Case 3:20-cv-00294-SLG-KFR    Document 78    Filed 02/13/24    Page 19 of 19